**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THADDEUS JONES, individually, STEVON GRANT, individually and as a Member of the Calumet City Concerned Citizens, and CALUMET CITY CONCERNED CITIZENS, an Illinois political action committee, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16 CV 8977 |
| v. | ) ) | |
| MICHELLE MARKIEWICZ-QUALKINBUSH, individually and in her official capacity as Mayor of the City of Calumet City, Illinois, NYOTA FIGGS, individually and in her official capacity as City Clerk for the City of Calumet City, Illinois, MAGDALENA "LENI" WOSCZYNSKI, individually and in her official capacity as Alderman of the City of Calumet City, RAMONDE D. WILLIAMS, individually and in his official capacity as Alderman of the City of Calumet City, ROGER MUNDA, individually and his as official capacity as Alderman of the City of Calumet City, NICK MANOUSOPOULOS, individually and in his official capacity as Alderman of the City of Calumet City, SAMUEL BULLOCKS, individually and in his official capacity as Alderman of the City of Calumet City, the CITY OF CALUMET CITY, an Illinois municipal corporation, and DAVID ORR, in his official capacity as the Cook County Clerk, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR TEMPORARY AND
PERMANENT RESTRAINING ORDER, FOR INJUNCTION,
FOR DECLARATORY JUDGMENT, FOR MANDAMUS
AND FOR RELIEF FOR VIOLATIONS AND
DEPRIVATIONS OF PLAINTIFFS' CIVIL RIGHTS**

The Plaintiffs, THADDEUS JONES, individually, STEVON GRANT, individually,

and the CALUMET CITY CONCERNED CITIZENS by and through their attorneys,

ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C., for their

Complaint´ against the Defendants, MICHELLE MARKIEWICZ-QUALKINBUSH,

1

individually and in her official capacity as Mayor of the City of Calumet City, Illinois, NYOTA FIGGS, individually and in her official capacity as City Clerk for the City of Calumet City, Illinois, MAGDALENA "LENI" WOSCZYNSKI, individually and in her official capacity as Alderman of the City of Calumet City, RAMONDE D. WILLIAMS, individually and in his official capacity as Alderman of the City of Calumet City, ROGER MUNDA, individually and in his official capacity as Alderman of the City of Calumet City, NICK MANOUSOPOULOS, individually and in his official capacity as Alderman of the City of Calumet City, SAMUEL BULLOCKS, individually and in his as official capacity as Alderman of the City of Calumet City, the CITY OF CALUMET CITY, a municipal corporation and DAVID ORR, in his official capacity as the Cook County Clerk, state as follows:

### PARTIES

1.      Plaintiff THADDEUS JONES ("Jones") is a citizen of the City of Calumet City.   Jones is also the duly-elected Alderman of the 3rd Ward of the City of Calumet City.   Jones was first elected as alderman of the 3rd Ward of the City of Calumet City in 1997 and has been re-elected as Alderman in 2001, 2005, 2009, and 2013.   Jones is also an elected State Representative for the 29th Legislative District and he has held this position since 2010.   Jones is a resident, voter and taxpayer of the City of Calumet City and a candidate for Mayor of Calumet City for the April 2017 elections.

2.      Plaintiff STEVON GRANT ("Grant") is a resident, voter, and taxpayer of the City of Calumet City.   He is also the chairman of the Plaintiff, CALUMET CITY CONCERNED CITIZENS ("the CCCC"), which is a political action committee located in Calumet City, Illinois.

3.      Defendant MICHELLE MARKIEWICZ-QUALKINBUSH ("Qualkinbush") is the current sitting mayor for the City of Calumet City, having become mayor on

September 4, 2003, after filing a lawsuit to contest the results of the April 1, 2003, election. She was re-elected as mayor in 2005, 2009, and 2013 for three four-year terms of office. On information and belief, she is a candidate for mayor of Calumet City in the April, 2017 elections and a political opponent of Plaintiff Jones.

4.   Defendant NYOTA FIGGS ("City Clerk") is the current City Clerk for the City of Calumet City, having first been appointed to this position in 2011 and re-elected in April, 2013. Figgs is a political ally of Defendant Qualkinbush and a political opponent of Plaintiff Jones.

5.   Defendant MAGDALENA "LENI" WOSCZYNSKI ("Wosczynski") is the alderman of the 2nd Ward of the City of Calumet City. She is a political ally of Defendant Qualkinbush and a political opponent of Plaintiff Jones.

6.   Defendant RAMONDE D. WILLIAMS ("Williams") is the Alderman of the 4th Ward of the City of Calumet City.

7.   Defendant ROGER MUNDA ("Munda") is the Alderman of the 5th Ward of the City of Calumet City. He is a political ally of Defendant Qualkinbush and a political opponent of Plaintiff Jones.

8.   Defendant NICK MANOUSOPOULOS ("Manousopoulos") is the Alderman of the 6th Ward of the City of Calumet City. He is a political ally of Defendant Qualkinbush and a political opponent of Plaintiff Jones.

9.   Defendant SAMUEL BULLOCKS ("Bullocks") is the Alderman of the 7th Ward of the City of Calumet City. He is a political ally of Defendant Qualkinbush and a political opponent of Plaintiff Jones.

10.   Defendant CITY OF CALUMET CITY ("the City") is an Illinois municipal corporation.

11. Defendants Qualkinbush, Figgs, Wosczynski, Williams, Munda, Manousopoulos and the City are hereinafter collectively referred to as "the City Council Defendants."

12. Defendant DAVID ORR ("ORR") is named solely in his capacity as the elected county clerk for Cook County, Illinois, and as such serves as the county's "election authority" as that term is defined in section 1-3 of the Election Code, 10 ILCS 5/1-3(8). As such, he is responsible for the printing and distribution of ballots for the November 8, 2016 general election in the City.

## VENUE AND JURISDICTION

13. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this claim occurred in this District.

14. This Court has jurisdiction over the Plaintiffs' 42 U.S.C. §1983 civil rights claims pursuant to 28 U.S.C § 1331 because those claims arise under the laws and Constitution of the United States.

15. This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the Section 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

## ALLEGATIONS COMMON TO ALL COUNTS

16. The City of Calumet City is a home rule municipality.

17. Pursuant to Article VII, Section 6(f) of the Illinois constitution, Section 28-7 of the Illinois Election Code, 10 ILCS 5/28-7, and other lawful authority, citizens of a home rule municipality, subject to referendum, may provide for their "officers, their manner of selection and terms of office…" Ill. Const. Art. VII, Sec. 6(f).

4

18.     Article VII, Section 11 of the Illinois constitution further requires that referenda questions proposed under Article VII may be proposed via citizen-initiated referendum or by resolution of the governing board of a unit of local government and further that these questions, unless otherwise provided by law, shall be presented at general elections.

19.     Pursuant to their authority under the Illinois constitution, on Saturday, June 18, 2016, Plaintiffs Grant and the CCCC began circulating a referendum petition (the "Citizens' Petition" or "the Citizens' term limits petition") in the City related to imposing term limits for the office of Mayor of Calumet City.   Specifically, the Petition asked whether the voters wanted the following question to appear on the ballot at the general election on November 8, 2016:

> Shall the City of Calumet City be subject to a term limit prohibiting all people from serving more than three (3) terms of office as Mayor, where a term of office includes partial terms of office of two years or more, including all past terms of office served and any term of office currently being served, effective immediately upon approval and passage of this binding referendum? □ Yes     □ No

20.     The petition was timely filed with the Defendant City Clerk on August 8, 2016.

21.     The petition contained a sufficient number of valid signatures as required by law.

22.     The petition was not challenged by an objector's petition, which is the mechanism established by the Illinois Election Code to challenge deficient petitions.

23.     Having received this valid petition, the Defendant City Clerk had a mandatory, ministerial, non-discretionary obligation to certify the question to the Cook County Clerk to appear on the ballot for the November 8, 2016 general election.

24.     Such certification was required, by law, to be filed with the Cook County Clerk by no later than September 1, 2016.

25.     Notwithstanding said ministerial obligation, the Defendant City Clerk failed to certify the question to the Cook County Clerk.  Further, the Defendant City Clerk failed to give any notice whatsoever to Plaintiff Grant, the principal proponent of the petition, nor to the CCCC that she was failing or refusing to certify the question presented on the Citizens' Petition.

26.     The City Clerk and the City Council Defendants specifically failed to inform the Plaintiffs that the City Clerk was refusing to certify their referendum question on the ballot for the November 8, 2016 merely to stymie them and to delay them from learning of said refusal to make it harder for the Plaintiffs to get the relief they require before the November 8, 2016 election.

27.     Upon information and belief, the Defendant City Clerk failed to certify the question pursuant to the Illinois Election Code's "rule of three," which specifies:

   …Irrespective of the method of initiation, not more than 3 public questions…may be submitted with respect to a political subdivision at the same election.  If more than 3 propositions are timely initiated or certified for submission at an election with respect to a political subdivision, the first 3 validly initiated, by the filing of a petition or by the adoption of a resolution or ordinance of a political subdivision, as the case may be, shall be printed on the ballot at that election.

   10 ILCS 5/28-1.

28.     As of June 18, 2016, the first day that the Plaintiffs started circulating their petition, the City Council had no plans to put any governmentally-initiated referenda on the ballot.

29.     The City Council defendants learned of the Plaintiffs' circulation of the Citizens' Petition and immediately embarked upon a series of actions designed to block the Plaintiffs from having the voters of Calumet City weigh in on whether or not they want term limits for their City officials.

6

30. Prior to June 18, 2016, the City Council of Calumet City had never discussed putting any government-initiated referenda on the ballot for the November 8, 2016 general election. However, immediately upon learning of the circulation of the Citizens' Petition, the City Council defendants embarked upon a series of actions to attempt to thwart and block the citizens' initiative from appearing on the ballot for the November 8, 2016 general election and the February 28, 2017 consolidated primary election.

31. First, on Monday, June 20, 2016, the first business day after the Plaintiffs started circulating the petition, the City Council Defendants directed Defendant City Clerk to post a notice that a previously-unscheduled Committee of the Whole Meeting ("COW Meeting") Ordinance and Resolutions Committee would occur on June 22, 2016, at 6:00 p.m. The items on the agenda included the consideration of three (3) resolutions to place three (3) different referenda questions on the ballot for the November 8, 2016, election.

32. Prior to the June 22, 2016 COW meeting, the City Council had never once discussed the possibility of putting any referenda questions on the ballot for the November 8, 2016 consolidated election. To the contrary, the City of Calumet City does not have a history of placing City-initiated referenda on the ballot. In fact, in the past 27 years, the City has only placed four referenda on the ballot that were initiated by action of the City Council.

33. The three (3) proposed referenda questions that the City Council was seeking to force thorough at the COW to block the Citizens' Petition were are follows:

> a. Shall the City of Calumet City allow taverns (bars) to remain open until 2:00 a.m. on Fridays and Saturdays? (Said question is hereinafter referred to as the "City's tavern hours referendum.")
>
> b. Shall any Calumet City elected official be able to receive two (2) pensions by being allowed to participate in the Illinois Municipal

Retirement Fund if they are a member of the Illinois General Assembly Retirement Fund? (Said question is hereinafter referred to as the "City's pension referendum.")

c. Shall the City of Calumet City, Cook County, Illinois, adopt the following term limits for the Office of Mayor to be effective for and applicable to all persons who are candidates for Mayor being elected at the Consolidated Election to be held on April 4, 2017, and subsequent elections:

Mayor – no person may hold the office of Mayor for more than four (4) consecutive fill four (4) year terms, counting prior full terms as either Alderman or Mayor in the computation of years served. With all prior consecutive terms of the current office holder as an Alderman or Mayor counted in determining for the officeholder.

34.    The very next business day, on Tuesday, June 21, 2016, the Defendant City Clerk posted an agenda and then a revised agenda for the Regular City Council Meeting scheduled for Thursday, June 23, 2016. This revised agenda added the aforementioned resolutions to the agenda for the Regular City Council meeting to be held on June 23, 2016, at 7:00 p.m. Unlike the agenda for the COW meeting, this new agenda also now advised that the referendum related to Qualifications for Mayor would binding, and slightly changed the language of the City's proposed term limits referendum.

35.    The next day, June 22, 2016, Deputy Clerk Bonato posted an agenda for another quickly-called special meeting to be held on June 24, 2016, at 6:00 p.m. The agenda for this meeting again contained referendum language for the term limits resolution to be considered at the June 23, 2016, regular City Council meeting.

36.    That same day, the Ordinance & Resolution COW met. No action was taken at this meeting related to the resolutions.

37.    On Thursday, June 23, 2016, the City Council meeting occurred. At said meeting, the City Council considered all three of the City's proposed referenda resolutions.

38.    The City Council noted that the City's tavern hour referendum and the City's pension referendum would be advisory questions, but that the City's qualifications for Mayor referendum would be binding if passed.

39.    The City Council Defendants targeted the pension referendum as a political act against Plaintiff Jones, as he is the only person in the City who is a member of the Illinois General Assembly who could qualify to receive a state pension and a pension from the Illinois Municipal Retirement Fund.

40.    The City Council Defendants, who are political opponents to Plaintiff Jones, voted to pass all three resolutions to place the questions on the ballot for the November 8, 2016 general election.

41.    The City's Qualifications for Mayor resolution that was passed by the majority of the City Council on Thursday, June 23, 2016, places the following question on the ballot as a binding referendum for the November 8, 2016 general election:

> Shall the City of Calumet City, Cook County, Illinois, adopt the following term limits for the Office of Mayor to be effective for and applicable to all persons who are candidates for Mayor being elected at the Consolidated Election to be held on April 4, 2017, and subsequent elections: Mayor – no person shall be eligible to seek election to, or hold the office of mayor where that person has held the elected office of either Mayor or Alderman of the City of Calumet City for or more consecutive full four (4) year terms.

(Said referendum is hereinafter referred to as "The City's Qualifications for Mayor referendum.")

42.    Plaintiff Jones voted against all three resolutions as did Alderman Eric Schneider.

43. The next day, on Friday, June 24, 2016, the previously-noticed Special Meeting was held and again, all three referenda resolutions were considered for passage. Defendant Williams and Aldermen Eric Schneider were not present at this meeting. The meeting began at 5:03 p.m. and ended at 5:06 p.m. All three of the resolutions were again quickly passed by the City Council Defendants who were present, with Plaintiff Jones being the sole dissenting vote.

44. Within six days of learning that the Plaintiffs were engaging in their right under the Illinois constitution to place a question on the ballot to change their terms of office of their governmental officials, the City Council Defendants called an unprecedented three meetings within one week designed specifically to block the citizens initiative, as well as to block Plaintiff Jones from exercising his right to run for office.

45. The effect of the City's Qualifications for Mayor Referendum would be to prevent Plaintiff Jones from his constitutionally-protected right to run for mayor because he has been a very popular alderman who has been in office for more than four terms. The City Council Defendants knew that Jones was intending to run for mayor of the City of Calumet City at the upcoming 2017 municipal elections, so the referendum was specifically worded to bar Jones from running for Mayor. The question was further limited to target just him because he is the only person running for Mayor who has served for Alderman for the time limit purportedly prohibited by this new qualification.

46. On August 8, 2016, non-party Joe Sherman filed the CCCC's citizen-initiated referendum petition at the Calumet City Clerk's office on behalf of the petition's principal proponent, Plaintiff Grant. Notwithstanding that Plaintiff Jones was not present and not the principal proponent of the referendum, Deputy City Clerk Bonato issued a receipt indicating that Plaintiff Jones was the person filing the petition,

10

even though there was no record of Jones being the primary proponent for this petition, demonstrating that the City believed that Jones was involved with the referendum.

47.  The acts of the Calumet City Defendants were designed to, and did, deprive the citizens who were seeking to put the Citizens' Petition with the term-limits referendum on the ballot from exercising their right under the Illinois constitution to put a binding constitutional referendum on the ballot related to their City government.

48.  The "rule of three" established by the Illinois Election Code is unconstitutional, as applied, when it is used, as here, to block the rights of the electorate to change their form of government, terms, manner of selection as permitted by the Illinois constitution by those very governmental actors who would be impacted by the change the citizens' seek. If the Illinois statutory "Rule of Three" limitation can be used by legislators in a politically retaliatory manner to deprive their constituents from exercising their right to initiative and referendum under the Illinois constitution to vote for term limits, then citizens may never have the opportunity to impose term limits because the elected officials who are in power will always have the ability to block such efforts.  There is no rational basis for the Illinois constitution giving citizens a right to change their local governmental officials' terms by referendum if the Illinois Election Code gives those very local government officials the right to block that action by simply passing resolutions with three contrived referenda so that the "Rule of Three" will apply.

49.  Having blocked the Plaintiffs and any other citizens from putting binding constitutional questions on the ballot for the November 8, 2016 elections, the City Council Defendants then took additional action to block the Plaintiffs and any other citizens from putting binding constitutional questions on the ballot for the next City election after that.  On August 25, 2016, the City Council Defendants have voted to adopt resolutions to place three questions on the ballot for the next occurring election in

11

the City of Calumet City, which would be the February 28, 2017 consolidated primary election. The sole purpose of this act is to block the citizens from having access to the ballot.

50. The actions taken by the Calumet City Defendants were taken under the color of law because they are elected officials or political subdivisions of the State.

51. Defendant Qualkinbush has stated publicly that the City Council Defendants took such action for political reasons.

## COUNT I

### SECTION 1983 – DUE PROCESS AND EQUAL PROTECTION VIOLATIONS (PLAINTIFFS GRANT AND THE CCCC AGAINST THE CITY COUNCIL DEFENDANTS)

52. Plaintiffs reallege and reassert the allegations set forth in paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53. The 14th Amendment of the United States Constitution prohibits any state actors from denying any person within the public jurisdiction the equal protection of the laws.

54. Defendants, acting under color of state law, singled out a particular group, namely Plaintiffs and all citizens who support the CCCC, for disparate treatment in two ways. First, they placed the three City referenda on the ballot for November 8, 2016 to block any citizen's initiative to protect the municipal officers. Second, the Defendant City Clerk's refusal to certify the Plaintiff's term limits referendum petition question was directed to cause the adverse affect of not having Plaintiffs' term limits referendum petition question appear on the ballot for the November 8, 2016, General Election. The City Council Defendants then failed to even notify the Plaintiffs that the City was refusing to certify their question.

12

55.     The City Council Defendants then placed a pension referendum question targeted at Plaintiff Jones and another politically motivated and legally impermissible question imposing new qualifications for candidates running for Mayor which was specifically designed to disqualify only Plaintiff Jones from running for Mayor.

56.     The City Council Defendants have been discriminatory against Plaintiffs on the basis of Plaintiffs' political beliefs and/or party affiliations, rather than being properly based in law, fact or legitimate public policy.

57.     The City Council Defendants, by the acts described above, denied Plaintiffs of the equal protection of the law when they placed three referenda on the ballot and when Defendant Figgs refused to certify the Plaintiffs' term limits referendum petition question to the ballot.  Such denial was based solely on the Plaintiffs' political beliefs and/or party affiliations, was designed to prevent Plaintiffs from exercising their rights, and had no reasonable basis or justification.

58.     The City Council Defendants' actions discriminate against Plaintiffs. Further, the City Council Defendants' failure to protect Plaintiffs against discriminatory acts constitute state action within the meaning of the 14th Amendment to the United States Constitution. Those Defendants have, therefore, violated Plaintiffs' rights to equal protection of the laws secured to them by the 14th Amendment.

59.     At all times, the City Council Defendants functioned as policy makers with respect to actions alleged herein.

60.     Because of the actions of these Defendants, Plaintiffs have suffered, and continue to suffer, damages.

61.    By reason of the foregoing, these Defendants have subjected Plaintiffs to deprivation of their rights to equal protection under the laws and are liable in equity and for damages to Plaintiffs under the law.

62.    Article VII, Section 6 of the Illinois State Constitution and Article 28 of the Illinois Election Code give Plaintiffs Grant and the CCCC, as well as the citizens of Calumet City, the right to place a question on the ballot related to changing the terms of the City's elected municipal officials. (Ill. Const. 1970 Art. III, §3); 10 ILCS 5/28-1, *et seq.*

63.    Because the citizens have the right to change the terms of elected City officers by referendum and the Illinois Constitution and the Illinois Election Code give such right to citizens, including Plaintiff Grant and the members of the Plaintiff CCCC, that right is similarly entitled to protection.  This right is also intertwined with the rights of voters and candidates and cannot be unfairly or unnecessarily burdened.

64.    The City Council Defendants, as a reaction to the Plaintiffs' citizens' initiative, engaged in concerted activity, a conspiracy, and a course of conduct that denied Plaintiffs access to the ballot without due process of law by their orchestrated moves, each of whom was operating under color of state law in their capacities as elected officials.

65.    Specifically, the City Council Defendants took action to fill the ballot for the November 8, 2016 general election with three city-initiated referenda thereby guaranteeing that citizens cannot place any referenda at all on the ballot in Calumet City for these two elections pursuant to the "rule of three," nor, therefore, can the citizens of Calumet City change their government or terms of office as permitted by the Illinois Constitution.

14

66.     The actions of City Council Defendants arbitrarily and capriciously denied Plaintiffs their rights to have their constitutional referendum appear on the ballot without due process of law.

67.     The City Council Defendants' official actions have burdened, and continue to unfairly and unnecessarily burden, the Plaintiffs and the citizens who circulated and signed the citizen-initiated term limits referendum petition and has deprived the citizens from asserting their voice and their preference related to term limits of elected officials in the City of Calumet City.

68.     Over 1,000 citizens signed the citizen-initiated referendum petition, while only 5 or 6 citizens (the Mayor and the aldermen who voted in the affirmative for these three (3) resolutions) have outwardly supported the referendum questions passed by the City Council.  The will of the people to have their voices heard and their question placed on the ballot must supersede the will of politicians to protect their tenure as an elected official.

69.     Defendants have impermissibly acted to deprive the Plaintiffs of their First Amendment Rights and to equal protection under the law and a free and equal choice as provided by both the 14th Amendment of the United States Constitution and Article III, Section 3 of the Illinois State Constitution.

70.     Additionally, the "Rule of Three," as applied, in this instance in unconstitutional because again, an official action by the Defendants, who are state actors acting under color of state law, has resulted in the deprivation of the right for citizens to place a referendum question on the ballot without being unnecessarily and unfairly burdened. To allow the elected officials and their appointees to engage in such political gamesmanship and protection of their own pocketbook by racing to call a meeting to pass referenda resolutions that were never proposed or openly discussed

previously clearly unfairly and unnecessarily burdens the rights of the citizens as conferred by the Illinois State Constitution and the Election Code.

71.     The City Council Defendants have violated the rights of Plaintiffs Grant and the Plaintiff CCCC, causing them to suffer immediate and irreparable harm for which they have no adequate remedy at law.

72.     Without judicial relief, the referendum question that was submitted by the valid and uncontested petition circulated and signed by Plaintiff Grant and the Plaintiff CCCC and 1,000 plus other Calumet City residents will not appear on the November 8, 2016 ballot.

73.     Time is of the essence in this litigation, because the ballots will be printed starting on Monday, September 19, 2016.

74.     The City Council Defendants did not provide any notice to the Plaintiffs that they were refusing to certify the question on the ballot.

75.     The "rule of three" is unconstitutional as applied and should be declared such.

76.     The referendum contained on the Plaintiffs' petition should be certified to the ballot for the November 8, 2016 election.

**WHEREFORE**, Plaintiffs Grant and CCCC respectfully request this Honorable Court to grant the following relief:

A.     Declare that Plaintiffs Grant and CCCC are entitled to have their term limits referendum petition question printed on the ballot for the General Election of November 8, 2016;

B.     Declare that the "Rule of Three" is unconstitutional as applied when, as here, governmental actors have used their governmental powers to block the Plaintiffs' and citizens rights under the Illinois constitution to implement certain changes to the terms of said governmental officers;

C.     For an order finding that the "Rule of Three," as applied, in this instance violates the 14th Amendment of the United States Constitution, the "Free and Equal" clause of the Illinois State Constitution in that it allows state

actors to unfairly and unnecessarily burden a proponent's ability to place a referendum question on the ballot and it further impairs the rights of voters to assert their will or preference related to public questions, particularly those that change the manner of selection of their elected officials;

D.     Order the Cook County Clerk to print Plaintiffs' term limits referendum petition question on the ballot and to program electronic voting machines accordingly for the General Election to be held on November 8, 2016;

E.     For an order requiring the Cook County Clerk to print the question posed on the Plaintiffs' petition on the ballot in Calumet City for the November 8, 2016 election;

F.     For an order finding that the Calumet City Defendants violated Plaintiff Grant's and the Plaintiff CCCC's First and Fourteenth Amendments of the United States Constitution, and the "Free and Equal" clause of the Illinois State Constitution;

G.     For an order enjoining Defendant Orr from printing and distributing ballots and from programming electronic voting machines in the City of Calumet City for the General Election of November 8, 2016, without the Plaintiffs' term limits referendum petition question on said ballots and programmed accordingly into said electronic voting machines; or

H.     Order the City Council Defendants to pay compensatory damages to the Plaintiffs;

I.     Order the City Council Defendants to pay punitive damages to Plaintiffs; and

J.     Order the City Council Defendants to pay Plaintiffs' attorneys' fees and costs.

K.     For such other and further or different relief as this Court may deem equitable or just.

## COUNT II

### SECTION 1983 – VIOLATION OF JONES' EQUAL PROTECTION RIGHTS: THE CITY'S QUALIFICATIONS FOR MAYOR REFERENDUM CREATES AN ARBITRARY CLASSIFICATION THAT DISCRIMINATES AGAINST A PERSON WHO IS A MEMBER OF A CLASS WITHOUT A LEGITIMATE STATE INTEREST

77.     Plaintiff Jones realleges and reasserts the allegations set forth in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

78.     The City's Qualifications for Mayor Referendum that the City Council Defendants voted to place on the ballot for the November 8, 2016 election violates Plaintiff Jones' equal protection rights by barring him from seeking a higher office, the office of Mayor of Calumet City, based solely on his previous service as an Alderman.

79.     The wording of the referendum seeks to unlawfully change the qualifications for people seeking to run for Mayor by imposing a new qualification that, to qualify to run for Mayor of Calumet City, one cannot have previously served four terms as an Alderman in Calumet City.

80.     The City seeks to impose a new, unlawful qualification on candidates for Mayor by referendum.

81.     The City lacks the legal ability, through either legislative action or by a voter-adopted referendum, to change the qualifications of its elected municipal officials by adding a new qualification requiring that the candidate must not have previously served four terms as Alderman in the City of Calumet City in order to qualify to run for Mayor.

82.     The referendum, if passed, would bar Plaintiff Jones and others in the future who will have served as Calumet City Aldermen for more than four terms from seeking the higher office of Mayor.

83.     Said requirement is arbitrary and capricious and lacks any legitimate state interest.

84.     Imposing a new qualification that bars people with experience from seeking a higher, different office is irrational and against public policy.

85.     Said requirement violates the First and Fourteenth amendment rights of Plaintiff Jones, as well as the rights of the electors who want to elect him to serve as Mayor of Calumet City, including Plaintiff Grant.

18

86.     The City Council Defendants actions were under the color of state law.

87.     The City Council Defendants have taken these actions in retaliation against Plaintiff Jones because they are politically opposed to him.

88.     Plaintiff Jones is, and will continue to be, damaged by the City Council Defendants actions because he is not being taken as a serious candidate for Mayor with the threat of this potential "bar" to him running for Mayor.

89.     Plaintiff Jones has, and is suffering immediate, irreparable harm and lacks an adequate remedy at law.

WHEREFORE, Plaintiff Jones and Grant pray that this Court find in their favor and against the City Council Defendants and award the following relief:

A.     A court order declaring the City's Qualifications for Mayor referendum question to be invalid;

B.     A preliminary and permanent injunction prohibiting Defendant David Orr from printing the City's Qualifications for Mayor referendum on the ballot for the November 8, 2016 general election or for any election thereafter;

C.     A court order declaring that there are not three valid City-initiated referenda on the ballot for the November 8, 2016 election and therefore Plaintiff Grant and Plaintiff CCCC's referendum question must appear on the ballot for the November 8, 2016 general election because it is not barred by the "Rule of Three."

D.     Compensatory damages against the City Council Defendants;

E.     Punitive damages against the City Council Defendants; and

F.     Attorneys' fees and costs; and

G.     Such other and further or different relief as this Court deems just.

## COUNT III

### SECTION 1983 – VIOLATION OF JONES' EQUAL PROTECTION RIGHTS:   THE CITY'S QUALIFICATIONS FOR MAYOR REFERENDUM CREATES AN ARBITRARY CLASSIFICATION THAT DISCRIMINATES AGAINST JONES AS A CLASS OF ONE WITHOUT A LEGITIMATE STATE INTEREST

90. Plaintiff Jones realleges and reassert the allegations set forth in paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91. At the time that the City Council Defendants adopted the City's Qualifications for Mayor Referendum, the majority of the City Council Defendants knew or suspected that Alderman Jones was the only Alderman who had served four terms who was seeking to run for the office of Mayor at the April 4, 2017 consolidated elections.

92. The Defendant Mayor and City Attorney approached Plaintiff Jones to discourage him from running against the Defendant Mayor.

93. The City Council Defendants voted to place on the referendum question on the ballot for the November 8, 2016 to attempt to bar their political opponent, Plaintiff Jones, from running against their political ally, Defendant Qualkinbush, for Mayor at the April 4, 2017 election, or to otherwise diminish the credibility of Plaintiff Jones as a viable candidate for Mayor.

94. The Calumet City Defendants have taken these actions in retaliation for Plaintiff Jones exercising his First Amendment rights to free speech.

95. Defendant Qualkinbush, the incumbent Mayor who would be Plaintiffs Jones opponent in the mayoral election, has stated publicly that the City Council Defendants have adopted the resolutions to bar the Plaintiffs' referendum in political retaliation against Plaintiff Jones.

96. The Illinois General Assembly has already determined what qualifications a candidate for municipal offices must satisfy.

97. The City of Calumet City does not have the ability to impose a new qualifications on candidates who seek to run for a municipal office.

98.     Because the language of the referendum purporting to change the qualifications to run for the office of Mayor only impacts Plaintiff Jones, he is in a class of one.

99.     The City's pension referendum, which inquires whether one should be allowed to receive a pension under the Illinois Municipal Retirement Fund and from the General Assembly also only impacts Plaintiff Jones as he is the only elected official in Calumet City who is also a member of the General Assembly.

100.    Plaintiff Jones will be further damaged if the illegal City's Qualifications for Mayor referendum is permitted to go on the ballot because it diminishes his effectiveness as a candidate for Mayor of Calumet City.

101.    Plaintiff Jones is the victim of intentional discrimination by the City Council Defendants who knew or should have known that they had no justification, based upon their public duties, to single him out for unfavorable treatment such as barring him from running for the office of Mayor.

102.    The City Council Defendants have no rational basis to ban people from running for the office of Mayor if they have previously served as Alderman for four terms.

103.    In this case, the City Council Defendants have taken actions specifically to prevent Plaintiff Jones from exercising his protected First and Fourteenth Amendment rights, as well as his rights under Illinois law.   First, the City Council Defendants placed an advisory question on the ballot which is designed to target Plaintiff Jones.   The City's pension referendum question purports to ask citizens whether any Calumet City elected official should be able to receive two pensions by being allowed to participate in the Illinois Municipal Retirement Fund if they are a member of the Illinois General Assembly Retirement Fund.   While the City may certainly put such a question on the

ballot, even while lacking the ability to legislate any pension reform, this proposed question applies to only one person in the City of Calumet City – Plaintiff Jones, and the City Council Defendants have placed this on the ballot to single out Plaintiff Jones at a time when he is running against their political ally, Defendant Qualkinbush.

104. Second, the City's Qualifications for Mayor referendum, which purports to be binding if passed, improperly imposes a new qualification on candidates for mayor, said qualification being that the person must not have served as Alderman for four terms. It bars an elected official from running for mayor even if that person has never served even one term as mayor previously. When applied to Jones, if the referendum passes, he will be prohibited from running for mayor because he served for several terms as alderman in the past. The referendum will use his past service as alderman against him, and will do so in a manner where Jones can do nothing about it because he has already served those terms. To the extent that the City's qualifications for Mayor referendum purports to immediately apply to the 2017 municipal elections, it violates Plaintiff Jones' equal protection rights by counting his past service in a different office prior to 2017 against him.

105. The Qualification for Office referendum presented and passed by the City Council Defendants violates the "free and equal" clause of Article III, Section 3, of the Illinois State Constitution and the 14th Amendment because it was clearly designed to prevent Jones from running for mayor and it improperly combines unrelated questions.

106. By operation of the term limits resolution referendum language, if it passes by a majority vote of the voters of Calumet City, Plaintiff Jones may be prohibited from seeking election to the office of mayor now and in the future. Conversely, the current sitting mayor, Qualkinbush, who has served in elected office for about 32 years (19 as City Clerk and 13 as Mayor) for the City of Calumet City, would

be allowed to run for and serve in the position of mayor for at least one more full term without violating the City's new qualifications.

107. The clear intent and design of the referendum language is to prevent Jones from being elected to and serving in the office of mayor as a result of his past service as alderman.

108. There is no legitimate state interest in imposing a term limit to bar a candidate from holding an office he has never held.

109. When Jones was elected alderman, this proposed office disqualification for serving four (4) full four (4) year terms as alderman was not in place nor was it proposed.

110. The act of tying one's past service time in the legislative branch (aldermanic seats) to their eligibility to serve in the executive branch (office of mayor) violates both the 14th Amendments and the "free and equal" clause of the Illinois State Constitution. It is irrational and serves no legitimate governmental purpose.

111. The acts of the Defendants in proposing and passing a resolution that was clearly designed to prevent a specific individual, or sets individuals without prior notice, was clearly a politically motivated act designed to prevent a current sitting alderman from running for mayor and allowing the current mayor at least one more chance at being mayor of the City of Calumet City.

112. Plaintiff Jones has a right in need of immediate protection and is continuing to suffer irreparable harm.

113. Plaintiff Jones lacks an adequate remedy at law.

114. Plaintiff Jones has a likelihood of success on the merits.

WHEREFORE, Plaintiff Jones and Grant pray that this Court find in their favor and against the City Council Defendants and award the following relief:

23

A.   A court order declaring the City's Qualifications for Mayor referendum question to be invalid;

B.   A court order declaring that the City of Calumet City does not have the legal ability or authority to impose new qualifications on candidates for municipal office beyond that established by Illinois law;

C.   A court order finding that Jones is in a "class of one" and that the City Council Defendants have intentionally acted against Plaintiff Jones to deprive him from exercising his rights under the First Amendment, the Fourteenth Amendment and otherwise under federal and Illinois law;

D.   A court order finding that the City Council Defendants have violated Plaintiff Jones' federal civil rights;

E.   A preliminary and permanent injunction prohibiting Defendant David Orr from printing the City's Qualifications for Mayor referendum on the ballot for the November 8, 2016 general election or for any election thereafter;

F.   A preliminary and permanent injunction prohibiting the City Council Defendants from taking further actions to violate Plaintiff Jones' rights;

G.   For compensatory damages against the City Council Defendants.

H.   Punitive damages against the City Council Defendants; and

I.   Attorneys' fees and costs; and

J.   Such other and further or different relief as this Court deems just.

## COUNT IV

## DECLARATORY ACTION: THE CITY'S QUALIFICATIONS FOR MAYOR REFERENDUM IS AN IMPROPER QUESTION, CONTRARY TO ILLINOIS LAW AND IT VIOLATES THE FREE AND EQUAL CLAUSE (PLAINTIFF JONES AGAINST THE CITY COUNCIL DEFENDANTS)

115.   Plaintiff Jones realleges and reassert the allegations set forth in paragraphs 1 through 114 of this Complaint as though fully set forth herein.

116.   Defendants' term limits referendum resolution improperly combines two separate questions that are not reasonably related to a common objective in a workable manner.   The question first asks if there should be term limits on the office of mayor but it also then ties service time as an alderman into eligibility for someone to be mayor,

and it does so retroactively and without prior notice by considering all terms served in the past.

117.    The above stated questions are not interrelated in that one's service time in one elected position should not and normally does not impact that person's eligibility to serve in a totally separate office.  Better stated, a person's service time in the legislative branch should have no bearing on their eligibility to serve in other branches of government, such as the executive branch or the judicial branch.  It is against public policy to bar someone from seeking a higher office merely because they have served in a different office.

118.    The Illinois Municipal Code already establishes the qualifications for people who seek to serve as a municipal mayor.  Specifically, Section 3.1-10-5 of the Illinois Municipal Code specifies that a person is not eligible for an elective municipal office unless that person is an eligible elector and has resided in the municipality for a year.  Further, a person cannot run for municipal office if they are indebted to a municipality, or if they have been convicted of a felony.  See 65 ILCS 5/3.1-10-5(a) and (b).

119.    The City seeks to impose a new, unlawful qualification on candidates for Mayor by referendum.

120.    The City lacks the legal ability, through either legislative action or by a voter-adopted referendum, to change the qualifications of its elected municipal officials by adding a new qualification requiring that the candidate must not have previously served four terms as Alderman in the City of Calumet City in order to qualify to run for Mayor.

121.    Said requirement is arbitrary and capricious and lacks any legitimate state interest.

122.   Plaintiff Jones is currently serving his fourth consecutive four (4) term of office as Alderman and the prior three terms were all full four (4) year terms of office.

123.   By operation of the term limits resolution referendum language, if it passes by a majority vote of the voters of Calumet City, Plaintiff Jones may be prohibited from seeking election to the office of mayor now and in the future.

**WHEREFORE**, Plaintiff Jones respectfully requests this Honorable Court to grant the following relief:

A.   Declare that the City Council of Calumet City lacks the ability to impose a new qualification on candidates for the office of Mayor, including a requirement that the candidate cannot have previously serve four terms or more as a City Alderman;

B.   Declare that the City's Qualifications for Mayor referendum presented and passed by the Calumet City Defendants violates Illinois law and the "free and equal" clause of the Illinois State Constitution, Article III, Section 3;

C.   For an order enjoining Defendant Orr from printing and distributing ballots and from programming electronic voting machines in the City of Calumet City for the General Election of November 8, 2016, with the City's Qualifications for Mayor referendum on said ballots and programmed accordingly into said electronic voting machines;

D.   For an order requiring the City Council Defendants to pay compensatory damages to Plaintiffs; and

E.   For an order requiring the City Council Defendants to pay punitive damages to Plaintiffs; and

F.   Order the City Council Defendants to pay Plaintiff Jones' attorneys' fees and costs pursuant to §1988 of the Federal Civil Rights Act.

G.   For such other and further or different relief as this Court may deem equitable and just.

## COUNT V

## MANDAMUS TO COMPEL THE CITY CLERK TO
## CERTIFY THE TERM LIMITS REFERENDUM PETITION
## QUESTION IN ACCORDANCE WITH 10 ILCS 5/28-5

124.   Plaintiffs Grant and CCCC reallege and incorporate by reference as fully set forth herein the allegations set forth in paragraphs 1 through 123 above.

125. When public officials fail or refuse to comply with requirements imposed upon them by statute, the courts may compel them to do so by means of a writ of mandamus. See, e.g. People ex rel. Sklodowski v. State of Illinois, 284 Ill.3d.809, 817-818, 674 N.E.2d 81 (1996), appeal allowed, 171 Ill.2d 584, 677 N.E.2d 971 (1997).

126. Section 28-5 of the Illinois Election Code specifies, in relevant part:

> Not less than 68 days before a regularly scheduled election, **each local election official** shall certify the public questions to be submitted to the voters of or within his political subdivision at that election which have been initiated by petitions filed in his office or by action of the governing board of his political subdivision...**Local election officials** and circuit court clerks **shall** **make their certifications**, as required by this Section, **to each election authority having jurisdiction** over any of the territory of the respective political subdivision in which the public question is to be submitted to referendum.

10 ILCS 5/28-5 (emphasis added).

127. Section 28-5 of the Election Code, in conjunction with section 28-4 and 10-8, only permits the Clerk to exclude matters a ballot certification if the petitions were invalidated by an electoral board, or if the petitions are not in apparent conformity with the Election Code as apparent on the face of those documents. 10 ILCS 5/10-8, 28-4, 28-5, and Welch v. Educational Officers Electoral Board for Proviso High School District No. 209, 322 Ill.App.3d 568, 750 N.E.2d 222 (1st Dist. 2001).

128. No objections were filed against the term limits referendum petition.

129. The petitions were in apparent conformity with the mandatory provisions of the Election Code and the City Clerk was required to certify the question on the Plaintiff's petition to the ballot for the November 8, 2016 election.

130. The Election Code does not give the Clerk any discretion to refuse to certify referenda questions, such as the Plaintiffs'. See 10 ILCS 5/10-28, et seq. generally, and Welch, supra.

131. Defendant Figgs has failed to perform her statutory responsibilities by intentionally refusing to certify to the proper election authorities the term limits referendum petition question of Plaintiffs (Grant and CCCC) as required by sections 28-4, 28-5, and 10-8 of the Illinois Election Code.

132. The Illinois Election Code expressly delegates to electoral boards the responsibility to take up the issue of determining whether referendum petitions are valid (10 ILCS 5/28-4, 10-8).

133. Figgs lacks any statutory or lawful authority whatsoever to deny certification to the ballot of the referendum petition question proposed by Plaintiffs Grant and CCCC, as such, Plaintiffs have a clear legal right to have all their term limits referendum question printed on the ballot and to obtain the legal relief they are requesting herein.

134. By Figgs' refusal to perform her statutory mandate, Plaintiffs Grant and CCCC have sustained damages and have incurred legal fees and costs to bring this action.

**WHEREFORE**, Plaintiffs Grant and CCCC respectfully request this Honorable Court to grant the following relief:

A. For an order compelling Clerk Figgs to certify Plaintiffs' term limits referendum petition question to the Cook County Clerk as a binding public question presented to the voters of the City of Calumet City at the general Election on November 8, 2016;

B. For an order compelling Defendant Orr to print and distribute ballots, and to program electronic voting machines, with Plaintiffs' term limits referendum petition question for the City of Calumet City to be voted upon at the General Election on November 8, 2016;

C. For an order compelling Defendants Figgs to pay Plaintiffs' damages and costs pursuant to 735 ILCS 5/14-105; and

D. For such other and further or different relief as this Court may deem equitable and just; or

Plaintiffs demand trial by jury.

<div style="margin-left:40%;">

**Respectfully submitted,**
**PLAINTIFFS THADDEUS JONES,**
**STEVON GRANT AND CALUMET**
**CITY CONCERNED CITIZENS**

</div>

By:   /s/  Keri-Lyn J. Krafthefer
        One of Plaintiffs' attorneys

Keri-Lyn J. Krafthefer (6199188)
Tiffany A. Nelson-Jaworski (6278126)
Adam W. Lasker (6290010)
**ANCEL, GLINK, DIAMOND, BUSH, DiCIANNI & KRAFTHEFER, P.C.**
Attorneys for Plaintiffs
140 S. Dearborn Street - Sixth Floor
Chicago, IL 60603-5202
Telephone: (312) 604-9126
Email: kkrafthefer@ancelglink.com
      tjaworski@ancelglink.com
      alasker@ancelglink.com

4816-9148-3960, v. 1

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF COOK     )

## VERIFICATION

I, THADDEUS JONES, being duly sworn, deposes and says: I am the plaintiff in this action. I have read the foregoing complaint and know the content thereof; the same is true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
THADDEUS JONES

SUBSCRIBED AND SWORN to
before me this 12th day
of September, 2016.

_____
NOTARY PUBLIC

OFFICIAL SEAL
SHELIA RAY
Notary Public - State of Illinois
My Commission Expires Apr 5, 2017

4827-6436-8440, v. 1

STATE OF ILLINOIS ) 
                           ) SS

COUNTY OF COOK )

## VERIFICATION

I, STEVON GRANT, being duly sworn, deposes and says: I am the plaintiff in this action. I have read the foregoing complaint and know the content thereof; the same is true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

STEVON GRANT

SUBSCRIBED AND SWORN to
before me this 12th day
of September , 2016.

NOTARY PUBLIC

OFFICIAL SEAL
SHELIA RAY
Notary Public - State of Illinois
My Commission Expires Apr 5, 2017